United States District Court
Southern District of Texas
**ENTERED**
January 02, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY BRENT ARNOLD II, | § § | |
| Plaintiff. | § § | |
| V. | § § | CIVIL ACTION NO. 4:22-cv-04240 |
| COMMISSIONER OF SOCIAL SECURITY, | § § § § | |
| Defendant. | § § | |

## OPINION AND ORDER

Plaintiff Larry Brent Arnold II ("Arnold") seeks judicial review of an administrative decision denying his applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act (the "Act"), respectively. Before me are competing motions for summary judgment filed by Arnold and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner").[1] *See* Dkts. 9, 12. After reviewing the briefing, the record, and the applicable law, Arnold's motion for summary judgment (Dkt. 9) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 12) is **GRANTED**.

## BACKGROUND

Arnold filed applications for disability insurance and supplemental security income benefits on March 25, 2020, alleging disability beginning December 15, 2018. Arnold's application was denied and denied again upon reconsideration. On October 6, 2021, an Administrative Law Judge ("ALJ") held a hearing. On November 17, 2021, the ALJ issued a decision, finding that Arnold is not disabled.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past

relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

At Step 1, the ALJ found that Arnold "has not engaged in substantial gainful activity since December 15, 2018, the alleged onset date." Dkt. 7-3 at 16.

At Step 2, the ALJ found that Arnold suffered from "the following severe impairment: degenerative joint disease (DJD) of the left knee." *Id.*

At Step 3, the ALJ found that Arnold "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.*

Prior to consideration of Step 4, the ALJ determined Arnold's RFC as follows:

> [Arnold] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 6 hours, walking for 6 hours; and push/pull as much as can lift/carry. The claimant can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop frequently, kneel occasionally, crouch occasionally, and crawl occasionally.

*Id.* at 16–17.

At Step 4, the ALJ found that Arnold "is unable to perform any past relevant work." *Id.* at 19.

Nevertheless, the ALJ elicited testimony from a vocational expert that "there are jobs that exist in significant numbers in the national economy that [Arnold] can perform." *Id.* Accordingly, the ALJ found that Arnold is not disabled.

## DISCUSSION

Arnold's sole point of contention is that the ALJ erred in evaluating Arnold's "subjective allegations and the medical opinion evidence." Dkt. 10 at 5. I disagree.

Arnold first argues that the ALJ erred by not recounting each of Arnold's symptoms, like the fact that "his leg swells up full of fluid." *Id.* at 7. I will assume, arguendo, that it was error to not specifically discuss each of Arnold's self-reported symptoms. Even so, the error must be harmful to be reversible. "[W]hen it is inconceivable that a different administrative conclusion would have been reached," the error is harmless. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Here, even if the ALJ went back and discussed each and every one of Arnold's symptoms, it is inconceivable that a different conclusion would have been reached because the objective medical evidence simply does not support Arnold's symptoms. *See* 20 C.F.R. § 404.1529(c)(4) (providing that subjective "symptoms, including pain, will be determined to diminish your capacity for basic work activities **to the extent that [they] can reasonably be accepted as consistent with the objective medical evidence**" (emphasis added)).

For example, Arnold complains of a "swollen, stiff, and painful" left knee. Dkt. 10 at 9. In his motion for summary judgment, Arnold points out that his "knee was often observed to be swollen, by multiple different medical professionals over the years." *Id.* The ALJ did not expressly discuss Arnold's complaints of swelling and pain. But, as Arnold acknowledges, "the ALJ . . . admit[ted] [Arnold]'s knee was swollen, stiff, and painful during the consultative examination." *Id.* So, the ALJ did not overlook this symptom. Rather, the ALJ weighed the evidence differently than Arnold would prefer, observing: "On the other hand, [the

4

consultative examiner] found no edema noted in the pedal area or the ankle area," and "x-rays showed no significant knee joint effusion." Dkt. 7-3 at 17, 18 (citations omitted). Accordingly, even if the ALJ had expressly discussed Arnold's complaints of swelling, it would not have changed the outcome.

Nor would it have made a difference for the ALJ to have discussed the fact that Arnold "has no means of paying for treatment." Dkt. 10 at 8. Arnold provided no evidence or explanation regarding his inability to obtain medical treatment. "[I]nability to afford treatment by *itself* is insufficient . . . A plaintiff must also show that he could not obtain medical treatment from other sources, such as free or low-cost health clinics." *Kinan F. v. Saul*, No. 2:19-cv-88, 2020 WL 5930626, at *3 (N.D. Tex. June 19, 2020). Arnold made no showing regarding his inability to obtain free or low-cost health care.

Nor would it have made a difference for the ALJ to have discussed the fact that Arnold "receives assistance from his teenage children in caring for his father." Dkt. 10 at 8. Arnold testified that he—and only he—would take his father into the bathroom and "help him get undressed." Dkt. 7-3 at 40. It was *this* testimony that the ALJ relied on to find the consultative examiner's lifting opinion inconsistent with the record. *See id.* at 18. Moreover, the ALJ also found the consultative examiner's lifting opinion unpersuasive because "it appears to be based primarily on statements and presentation made by [Arnold] at the exam rather than any objective evidence of durational impairment." *Id.* Thus, discussing Arnold's testimony about receiving assistance from his children would not have changed the ALJ's analysis of the consultative examiner's opinion.

Nor would it have made a difference for the ALJ to have discussed Arnold's self-reported use of a cane. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9P, 1996 WL 374185, at *7 (July 2,

5

1996).[2] Unlike the cases Arnold cites, there is no such medical documentation in the record. *See Duenes v. Kijakazi*, 578 F. Supp. 3d 859, 872 (S.D. Tex. 2022) ("Both objective medical evidence and subjective evidence support [Plaintiff's] need for a cane and the ALJ should have addressed that evidence. The record shows that [Plaintiff's physician] prescribed a cane for [Plaintiff] . . . and [Plaintiff] was trained on how to use it."); *Temple v. Saul*, No. 4:19-cv-3320, 2020 WL 6075644, at *3 (S.D. Tex. Oct. 14, 2020) ("The record in the present case is replete with evidence that Plaintiff requires, and regularly uses, an assistive device.").

Yet, Arnold claims that he "was regularly prescribed and observed to be using his knee immobilizer, and was instructed to use either crutches, canes, or a walker, rather than bear full weight on his left leg." Dkt. 10 at 9–10. I will begin with the most obvious observation: a knee immobilizer is not a hand-held assistive device. Second, half of Arnold's citations are to medical records from early April 2018. *See* Dkt. 7-8 at 44, 46, 58. This is more than eight months *before* Arnold's alleged date of onset. "Medical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 582 n.19 (S.D.N.Y. 2022) (cleaned up). Third, while records from an April 30, 2019 emergency room visit show that Arnold was given instructions on using crutches, those records do not show that the crutches were prescribed, nor do those records describe the circumstances in which Arnold needed the crutches. *See* Dkt. 7-13 at 8. Finally, that the most recent medical opinion from the consultative examiner mentions nothing about the use of a cane,

---

[2] "While Social Security Ruling (SSR) 96-9P concerns individuals capable of less than a full range of sedentary work, district courts within the Fourth Circuit consistently rely on it for guidance when a claimant alleges that a hand-held assistive device was not properly considered in his or her RFC determination." *Schnurpel v. Berryhill*, No. 2:16-cv-06042, 2017 WL 2390548, at *13 (S.D. W. Va. Apr. 17, 2017). The cases cited in the remainder of this paragraph demonstrate that courts within the Fifth Circuit also rely on SSR 96-9P for guidance regarding proper evaluation of hand-held assistive devices.

walker, or crutches. *See* Dkt. 7-8 at 17–19. Accordingly, the ALJ was not required to account for Arnold's self-reported use of a cane in crafting Arnold's RFC.[3]

Finally, Arnold contends that the ALJ's evaluation of the consultative examiner's opinion was legal error because the ALJ "did not actually mention *any* of the other medical evidence in his decision." Dkt. 10 at 10. But the only other relevant medical evidence in the record is Arnold's April 30, 2019 emergency department visit.[4] Even if I assume that it was error for the ALJ not to have discussed this emergency room visit, such error would be harmless. The x-ray taken on April 30, 2019 in the emergency room showed only "small joint effusion." Dkt. 7-10 at 3. This is no different than the 2020 x-ray that the ALJ expressly discussed. *See* Dkt. 7-3 at 18 ("x-rays showed no significant knee joint effusion"). Moreover, the ALJ relied on the fact that Arnold "reported not receiving any treatment." Dkt. 7-3 at 18. Discussing a single emergency room visit would not have changed the ALJ's analysis regarding Arnold's lack of treatment, especially considering that the emergency room discharge papers instructed Arnold to "[f]ollow up with Orthopedics," which he never did. Dkt. 7-13 at 8.

For all these reasons, I affirm the Commissioner's decision.

## CONCLUSION

For the reasons stated above, Arnold's motion for summary judgment (Dkt. 9) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 12) is **GRANTED**.

SIGNED this ____ day of January 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[3] I share Arnold's frustration in the Commissioner's failure to address Arnold's arguments regarding his use of a cane in her motion for summary judgment. *See* Dkt. 13 at 3–4. But the Commissioner's lackluster defense does not give me a license to overturn her decision on the basis of a legally and factually unsupported argument.

[4] Recall that the April 2018 records predate the alleged onset date and are irrelevant.